No. 23215.

VIDA MAYE DIES, SPECIAL ADMINISTRATRIX OF THE ESTATE OF BENJAMIN F. DIES *v.* THE CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORATION; AND ARTHUR BOWMAN, TED BACH AND LAWRENCE J. PERRY, CONSTITUTING THE DULY APPOINTED AND ACTING MEMBERS OF THE CIVIL SERVICE COMMISSION FOR THE CITY AND COUNTY OF DENVER.

(483 P.2d 378)

Decided April 5, 1971.     Rehearing denied April 26, 1971.

218

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, Bruce Decker, for plaintiff in error.

Max P. Zall, City Attorney, James H. Snyder, Assistant, for defendants in error.

*In Department.*

Opinion by Mr. Justice Erickson.

This appeal was taken, pursuant to the provisions of C.R.C.P. 106(a)(4), from an order of the District Court which upheld a ruling by the Civil Service Commission denying reinstatement of Colonel Benjamin F. Dies to his former position as a member of the Denver Police Department.

At the time litigation was commenced, Colonel Dies sought reinstatement, as well as back pay, which was allegedly owed to him for the period commencing with his application for reinstatement and ending in 1966, when he suffered a stroke. The reinstatement issue is moot, inasmuch as Colonel Dies has died, and there remains

only the claim for back pay which is now being sought by Colonel Dies' widow.

■ This Court, after reviewing the record, is satisfied that there was substantial evidence to support the administrative ruling of the Civil Service Commission, and that the trial court committed no error. Accordingly, we affirm the findings of the trial court denying his widow's claim for back pay.

This controversy extends back to 1962, when Colonel Dies retired from the military service after having served the requisite number of years to obtain retirement benefits. Prior to retirement, Colonel Dies had acquired an extensive background in the firearms field. He was a firearms expert, and that expertise had been the basis of his applying to the Denver Police Department for classified service in 1936. He served from 1936 to 1941 as a firearms instructor for the Denver Police Department. In 1941, with the commencement of World War II, he entered the armed services. He was discharged from active duty in 1946 and was reinstated in the Denver Police Department after his release. By 1950, he had achieved the rank of Sergeant on the Denver Police Force. At the beginning of the Korean conflict in 1951, the Civil Service Commission granted him an idefinite leave of absence to return to military service. In 1955, when the Korean conflict terminated and the national emergency was declared to be at an end, Colonel Dies decided to remain in the military until such time as he became eligible for retirement. He obtained his retirement from the military service on a disability pension in July of 1962, and in September of 1962, he applied for reinstatement to the Denver Police Department. The Commission denied his reinstatement on the basis that he was physically unfit. A medical examination conducted at the time revealed that he had had one kidney removed and had angina pectoris, which had precipitated several heart attacks and required constant medication.

■ Colonel Dies, in seeking reinstatement before the

Civil Service Commission, and his counsel here, calls to our attention the fact that other members of the Police Department have had heart attacks and have still been allowed to carry on their police duties on a limited basis. He would have us compare him with other police officers who elected careers as law enforcement officers and provided long and faithful service to the Denver Police Department. Had Colonel Dies elected to complete his career as a police officer, he could have returned to the police service in 1955. Instead, he chose to complete his career as an Army officer and to obtain full military retirement benefits. Having made that choice, Colonel Dies cannot now claim that he was unfairly discriminated against by the Commission when it required him to meet the physical fitness standards demanded of new applicants, rather than those standards applied to career police officers.

The Commission's action in this matter was clearly authorized by the Denver Charter, Section C. 5.50, which provides that:

"Service in the armed forces of the United States in any war or *national emergency* shall be deemed and considered active service in the Classified Service of the Fire Department or the Police Department, provided that after his discharge from such service he has been readmitted to active service in said department and within such time and *under such conditions as are or may be provided for by the rules of the Civil Service Commission.*" [Emphasis added.]

In 1962, the conditions for reinstatement were set forth in Rule XIII, Section 4(a) of the Civil Service Commission. Rule XIII provided that an officer granted an indefinite leave for service in the military shall, within ninety days after discharge therefrom, file a request for reinstatement in the classified service, and said officer *"shall be subject to such medical examination and under conditions as the Commission deems necessary."* [Emphasis added.]

■ It is conceded that the examination by the medical examiner in this case was conducted without any particular guidelines from the Commission. However, it has not been shown that the medical examiner's determination of unfitness was unreasonable. Indeed, given Colonel Dies' age and state of health, it would have been difficult to decide otherwise. We shall not interfere with the Commission's ruling, since there is competent evidence to support it. *See Fallon v. Nicholson,* 136 Colo. 238, 316 P.2d 1054 (1957).

■ Colonel Dies' decision to remain in the military service until 1962, seven years after the end of the national emergency for which he was called into service, has raised the additional issue of whether Colonel Dies' conduct amounted to a constructive resignation. This Court held in *Police Pension and Relief Board v. Behnke,* 136 Colo. 288, 316 P.2d 1025 (1957), that classified service rights could be lost by a police officer by actions on his part which are inconsistent with continued membership in the service and indicate an intent to resign. We find that Colonel Dies' conduct was inconsistent with continued membership in the classified service. Therefore, his acts constituted a constructive resignation from the Denver Police Department, and his claim for back pay is without merit.

Judgment affirmed.

MR. JUSTICE DAY, MR. JUSTICE KELLEY, and MR. JUSTICE LEE concur.